IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OIL-DRI CORPORATION OF AMERICA, ) <br> ) <br> Plaintiff and Counterclaim Defendant, ) <br> v. ) <br> ) <br> NESTLÉ PURINA PETCARE COMPANY, ) <br> ) <br> Defendant and Counterclaim Plaintiff. ) | No. 16 C 09179 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

In response to a suit from Plaintiff Oil-Dri Corporation of America ("Oil-Dri") for patent infringement, Defendant Nestlé Purina Petcare Company ("Nestlé") filed counterclaims for False Advertising and Commercial Disparagement under the Lanham Act, 15 U.S.C. § 1125 (Counts III and IV), Deceptive Trade Practices under 815 ILCS 510/2 (Count V), and Tortious Interference with Business Relationships and Expectations (Count VI). Oil-Dri moves to dismiss these counterclaims pursuant to Rule 12(b)(6) for failure to state a claim. Oil-Dri also filed a Motion to Compel specific details that would support Nestlé's invalidity contentions under LPR 2.3(b)(3) and to compel processing information for the accessed products under LPR 2.1(b)(1), in addition to seeking a Protective Order over its infringement investigations as protected work-product, since these were obtained in preparation for litigation. For the reasons stated herein, the Court grants Oil-Dri's Motion to Dismiss Nestlé's Counterclaims III-VI [30] and denies its Motions to Compel and for Protective Order. [39]

**BACKGROUND**

On September 23, 2016, Oil-Dri sued Nestlé for patent infringement of its cat litter product, U.S. Patent No. 9,408,368 ("'368 Patent"). (Dkt. 1; Dkt. 24, ¶ 1.) The patent implicates

four Tidy Cats Lightweight products: 4-in-1 Strength; 24/7 Performance; Glad Tough Odor Solutions; and Instant Action. (Dkt. 44-25, at 2.) The products utilize clumping clay composed of sodium bentonite ("NaB"), and a mineral known as "perlite." (Dkt. 39, at 3.) The '368 patent specifies, in pertinent part, that: NaB comprises at least 47% of the product's external, exposed surface area ("ESA"); the ESA of the granular material be 5-53% of the total ESA of the mixture; the mixture be "removably clumpable." (*Id.*; Dkt. 44-25, at 3-4.) On November 10, 2016, Nestlé filed a response along with counterclaims. (Dkt. 24.)

In those counterclaims, Nestlé alleges that Oil-Dri's '368 Patent claim is invalid because its litter products do not contain a "mixture" of sodium bentonite and granular fillers and do not meet the limitation of 5-35% granular filler on the total surface area. (*Id.*, ¶ 10.) Nestlé further alleges that Oil-Dri produced and disseminated two flyers to Nestlé's retail customers. (*Id.*, ¶¶ 12, 15.) The flyers state that Oil-Dri has valid patents for Fresh & Light's lightweight clumping clay blend, and also for "blend materials later used by [Oil-Dri's] competitors." (Dkt. 24-1.) The flyer also states that "[i]f you buy a lightweight litter made by others, you could get something inferior to the Cat's Pride lightweights, something that is an infringing product, or maybe even both." (Dkt. 24, ¶ 13.) The flyer goes on to say that patent infringement can lead to courts pulling infringing products from the market, "leaving retailers without that product to sell and angering their customers," and "can leave retailers 'holding the bag' for damages…'" (Dkt. 24-1.) The flyer does not note where or to whom it was distributed, nor the date of distribution. (*See id.*) On December 1, 2016, Oil-Dri filed a Motion to Dismiss these claims. (Dkt. 30.)

Additionally, on January 23, 2017, Oil-Dri filed a Motion to Compel Invalidity Contentions and for a Protective Order Concerning Infringement Testing. Oil-Dri filed its Motion to Compel, arguing that Nestlé has not complied with LPR 2.3(b)(3) by failing to provide

details sufficient to disclose its invalidity contentions, specifically regarding the external surface area, particle sizes, and particle densities for sodium bentonite or perlite that Nestlé uses in its product. (Dkt. 39, at 5-7.) Oil-Dri also argues that Nestlé should have to disclose processing information for the accessed products under LPR 2.1(b)(1). (Dkt. 39, at 7-8.) In response, Nestlé argues that LPR 2.3 only requires a party to disclose "information to the extent known to the party asserting invalidity" at the time it serves initial infringement contentions, and that Oil-Dri asks the Court to compel information that will come out through discovery and experts. (Dkt. 43, at 2-6.) Moreover, Nestlé claims that it provides abundant specificity with the charts given to Oil-Dri. (*Id.* at 3-6.)

Finally, in the same January 23, 2017 motion, Oil-Dri seeks a Protective Order over its accused product testing concerning the product's ESA and clumpability, claiming work-product protection since Oil-Dri conducted the testing in preparation for litigation. (Dkt. 39, at 8.) Oil-Dri offered to provide the information to Nestlé, if Nestlé would agree that this disclosure did not waive related attorney-client privilege. (Dkt. 39, at 8; Dkt. 38-11, 38-12; Dkt. 44-25, 44-26; Dkt. 47-2.) Nestlé declined to agree to such a waiver, arguing that the information underlying the infringement investigations can be shared without implicating protected work-product or confidential client communications between Oil-Dri and its counsel. (*Id.*; Dkt. 43, at 10.) Accordingly, Oil-Dri has not disclosed this information to Nestlé. (*Id.* at 8.)

## **DISCUSSION**

Oil-Dri moves to dismiss Nestlé's Counterclaims III-IV (False Advertising and Commercial Disparagement under the Lanham Act, 15 U.S.C. § 1125(a)) and V (Deceptive Trade Practices under 815 ILCS 510/2) because Nestlé does not allege that Oil-Dri made these statements in bad faith. (Dkt. 31, at 8-13.) Oil-Dri further argues that Counterclaim VI (Tortious

Interference with Business Relationships and Expectations) should be dismissed because Nestlé does not specify with whom it had an expectation of future business. (*Id.*, at 13-14.) In its Motion to Compel, Oil-Dri argues that Nestlé should have disclosed details regarding the external surface area, particle sizes, and particle densities for sodium bentonite or perlite that Nestlé uses in its product, along with processing information for the accessed products. (Dkt. 39, at 5-8.) Nestlé responds that it provides sufficient specificity, and that it need not have disclosed additional information in its initial disclosures. (Dkt. 43, at 2-6.) Lastly, Oil-Dri seeks a Protective Order over certain information as protected work-product. (Dkt. 39, at 8.) Nestlé argues that the information underlying Oil-Dri's infringement investigations is not protected as work-product and is not confidential client communication. (Dkt. 43, at 10)

## I.  Oil-Dri's Motion to Dismiss

### A.  Legal Standard

To survive a 12(b)(6) challenge, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 679). The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007) (citations omitted). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

4

### B. Counterclaims III and IV under the Lanham Act

Lanham Act claims alleging false representation must meet Rule 9(b)'s heightened pleading requirements. *See* 15 U.S.C.A. § 1125(a); Fed. R. Civ. P. 9(b); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819–20 (7th Cir. 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir.1999)); *see e.g.*, *Ferris Mfg. Corp. v. Carr*, No. 14 C 4663, 2015 WL 279355, at *6 (N.D.Ill. Jan. 21, 2015) (citing *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 709 (N.D.Ill. 2006)) (recognizing heightened pleading requirements for Lanham Act claim); *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F.Supp.3d 788, 792 (2015) (defendants "correctly" identified Lanham Act counts to require heightened pleading "because the counts allege…fraudulent conduct"). To meet the heightened pleading requirement, a claim must allege the time, place, and content of the misrepresentation. *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (citing *Uni*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted)). In addition, Lanham Act claims involving patents must first allege that the defendant undertook the marketplace activity in bad faith. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999); *see e.g.*, *GL Trade Americas, Inc. v. Trading Techs. Int'l, Inc.*, No. 11 C 1558, 2012 WL 205909, at *4 (N.D. Ill. Jan. 23, 2012), as corrected (Feb. 13, 2012) (quoting *Zenith*, 182 F.3d at 1353). Other courts have required a threshold showing of a false statement, or disregard for its veracity, to show bad faith. *See e.g.*, *id.* at *5. "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *See e.g.*, *id.* (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998)) (internal quotation and citation omitted).

Nestlé's Counterclaims III and IV under the Lanham Act allege false representation, so they are subject to Rule 9(b)'s heightened pleading requirements. *See* 15 U.S.C.A. § 1125(a); Fed. R. Civ. P. 9(b); *Hot Wax, Inc.*, 191 F.3d at 819–20; *see e.g.*, *Ferris Mfg. Corp.*, 2015 WL 279355, at *6; *Medscript Pharmacy, LLC*, 77 F.Supp.3d at 792. (*See* Dkt. 24, at 22-25.) Nestlé attaches a sample of the flyer in question, but does not allege the time and place of its distribution, so it does not meet this aspect of the heightened pleading requirement. (*See* Dkt. 24, at 22-25; Dkt. 24-1.) *See Rocha*, 826 F.3d at 911 (internal citation omitted). Further, although Nestlé recites bad faith as an element, it does not state facts sufficient to allege this. Nestlé disputes the validity of Patent '368, but Nestlé also admits in its Answer that "…Exhibit 1 to the Complaint appears to represent a copy of U.S. Patent No. 9,408,368, and that the patent speaks for itself." (Dkt. 24, at 3.) Nestlé thus does not allege that Oil-Dri acted outside of a good faith, if confused, belief about the nature and scope of its patent rights. *See e.g.*, *GL Trade Americas*, 2012 WL 205909, at *5 (internal quotation and citations omitted). Nestlé also does not allege that any of the specific statements in Oil-Dri's flyer are objectively false. (*See* Dkt. 24, at 22-25.) Nor do the flyers state that Nestlé's product infringed. (*See* Dkt. 24-1.) Nestlé therefore fails to make the requisite threshold showing of falsity or disregard for the truth to allege bad faith. *See e.g.*, *GL Trade Americas*, 2012 WL 205909, at *5-6. Accordingly, the Court dismisses counterclaims III and IV. *See* 15 U.S.C.A. § 1125(a); Fed. R. Civ. P. 9(b); *Hot Wax, Inc.*, 191 F.3d at 819–20; *Ferris Mfg. Corp.*, 2015 WL 279355, at *6; *Medscript Pharmacy, LLC*, 77 F.Supp.3d at 792; *GL Trade Americas*, 2012 WL 205909, at *4-6.

**C. Counterclaim V under the Deceptive Trade Practices Act (815 ILCS 510/2)**

Likewise, courts have found that "[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth

under the Lanham Act." *See, e.g.*, *Nat'l Financial Partners Corp. v. Paycom Software, Inc.*, No. 14 CV 7424, 2015 WL 3633987, at *2 (N.D.Ill. June 10, 2015) (internal quotation and citations omitted); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F.Supp.3d 1005, 1012 (N.D.Ill. 2014) (same); *Box Acquisitions, LLC v. Box Packaging Products, LLC*, 32 F.Supp.3d 927, 934 (N.D.Ill. 2014) (same). Because Counterclaims III and IV do not meet the heightened pleading requirements, the Court dismisses Counterclaim V.

### D. Counterclaim VI for Tortious Interference with Business Relationships and Expectations

Additionally, Nestlé's Counterclaim VI for Tortious Interference with Business Relationships and Expectations must plead that Nestlé had a reasonable expectation of entering into a valid business relationship, or had a valid business contract, that Oil-Dri knew about this and purposefully interfered with this relationship or contract, and that Oil-Dri thus damaged Nestlé. *See Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (internal citation omitted). Under this standard, to state a claim a plaintiff must allege that it held a business expectancy with a specific third party. *See id.* at 945-46; *see e.g.*, *Ammons v. Dart*, No. 13 C 8817, 2015 WL 1740086, at *4 (N.D.Ill. Apr. 13, 2015) (citing *Ali*, 481 F.3d at 945-46) (granting motion to dismiss where plaintiff did not allege a business expectancy with a specific third party). Nestlé fails to do so. Its claim speaks generally to its "valid relationship with its retail customers and prospective retail customers" without providing any specifics. (Dkt. 24.) Nestlé thus fails to allege Tortious Interference with Business Relationships. *See Ali*, 482 F.3d at 945-46; *see e.g.*, *Ammons*, 2015 WL 1740086, at *4. Therefore, the Court also dismisses Counterclaim VI.

## II. Motion to Compel

### A. Legal Standard

Courts review motions to compel discovery under a control standard. *Thermal Design, Inc. v. American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-89 (7th Cir. 2014). In other words, a party must have sufficient control over the evidence sought in order for a court to compel its disclosure. *Id.* Sufficient control does not require physical control. Parties need only have the legal right to obtain the evidence in question. *Id.* (citing *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D.Ill. 2004)). Rule 37 governs motions to compel discovery, which requires the movant to certify that it has tried in good faith to resolve the discovery dispute without court interference. Fed. R. Civ. P. 37(a)(1).

### B. LPR 2.3's Requirements for Invalidity Contentions at This Stage

Under Local Patent Rule 2.3, a party is required to provide: identification, with particularity, of each item of prior art that allegedly anticipates each asserted claim, or renders it obvious; a statement of whether each item of prior art allegedly anticipates each asserted claim, or renders it obvious; a chart identifying where specifically in each alleged item of prior art each element of each asserted claim can be found; and a detailed statement of any grounds of invalidity. L.P.R. 2.3(b)(1)-(4). The chart in particular must include, for any element that such party contends is governed by 35 U.S.C. § 112(6), "a description of the claimed function of that element and … [identity] … of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function." L.P.R. 2.3(b)(3). Critically, Local Rule 2.3 "only requires parties to provide early notice of invalidity contentions and then, subsequently, to provide more detailed invalidity contentions at set times during discovery." *See e.g.*, *Olesky v. General Electric Co.*, No. 06 C 01245, 2013 WL 3233259, at *17 (N. D. Ill. June 26, 2013).

Because Local Rule 2.3 requires parties to identify "the structure(s) … or material(s) in each item of prior art that performs the claimed function," Nestlé must disclose with clarity the external surface area, particle sizes, and particle densities of their accused product, to the extent that these measures are relevant to Patent '368, as alleged by Oil-Dri. *See* L.P.R. 2.3. The question is a matter of when. Nestlé must provide these details to the "extent known" within fourteen days of service, and then at other times through discovery. *See* L.P.R. 2.3; *see, e.g.*, *Olesky*, 2013 WL 3233259, at *17. Nestlé contends that it has provided what it had to the extent known at that time of disclosure, and could have more information to give now or at another point before discovery closes. Oil-Dri does not show otherwise, and thus fails to demonstrate that Nestlé did not disclose with sufficient clarity the measures relevant to Patent '368 in its initial disclosures. *See* LPR 2.3; *Thermal Design, Inc.* 755 F.3d at 838-89; *see also, e.g.*, *Olesky v. General Electric Co.*, 2013 WL 3233259, at *17. (*See* Dkt. 39.) Accordingly, the Court does not have reason to compel Nestlé to provide greater clarity to Oil-Dri pursuant to under LPR 2.3.

## C. LPR 2.1's Requirements for Providing Processing Information at This Stage

Oil-Dri believes the process will impact the external surface area calculations, making this information relevant and thus necessary to disclose. (Dkt. 48, at 4.) However, Nestlé argues that Oil-Dri does not "claim any process or recited steps, and neither Oil-Dri's Complaint nor its Initial Infringement Contentions identify any alleged processes or steps." (Dkt. 43, at 7.)

Under Local Rule 2.1, a party is required to provide "documents sufficient to show the operation and construction of all aspects or elements of each accused … product … process, method or other instrumentality identified with specificity in the pleading of the party asserting patent infringement…" L.P.R. 2.1. Yet Oil-Dri only points to its need to discuss processing components in an Affidavit from George Robert Gross, one of the co-inventors of Nestlé's Tidy

Cat. (*See* Dkt. 38-3; Dkt. 39, at 7.) Oil-Dri did not point to this in its pleading asserting patent infringement, so Nestlé would not have been required to provide these documents under Local Rule 2.1. (Dkt. 1; Dkt. 39, at 7-8.)

Nonetheless, Nestlé says it has provided, along with other documents, the exact "Product Formulation" for each of the accused products. (Dkt. 43, at 7-8.) Nestlé also says it is working to gather information on the manufacture of the accused products. (*Id.*) Yet Oil-Dri says that Nestlé refused to supplement its disclosures with this information through either interrogatories or during their January 20, 2017, meet-and-confer. (Dkt. 39, at 8.) To support its claim, Oil-Dri cites to one case, *Pactiv Corp. v. Multisorb Technologies, Inc.*, where the court critiqued the defendant for withholding information "that would have more clearly allowed [the plaintiff] to assess infringement but failed to turn it over." *See e.g.*, No. 10 CV 461, 2012 WL 1831517, at *6 (N.D.Ill., May 18, 2012). But there, the court had found that the defendant already possessed the information at the time of the motion based on the defendant's own submissions, and further that its initial disclosures merely contained a two-page marketing brochure and short promotional video, which were patently unhelpful to the plaintiff. *See e.g.*, *id.* The comparison is hardly appropriate when Nestlé's initial disclosures provided charts with robust details. (*See* Dkt. 44.) In light of this, the Court declines to compel Nestlé to produce further such evidence at this time. Oil-Dri's Motion to Compel is therefore denied pursuant to Local Rule 2.1.

### III.  Motion for Protective Order

### A.  Legal Standard

A court can grant a motion for protective order to limit discovery if the evidence is "obtainable from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ.

P. 26(b)(2)(C). Rule 26 allows courts to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The order can, among other actions, specify the terms of the disclosure or prescribe a discovery method other than the one selected by the party seeking discovery. *Id.* But, the party "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.*

**B. Infringement Investigations**

The work-product doctrine does not apply to the information underlying the documents. "In a chemical patent, there is no way to show that these elements exist in the accused product without utilizing highly technical tests performed by experts." *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981); *see e.g., Lynk Labs, Inc. v. Juno Lighting LLC*, No. 15 C 4833, 2016 WL 6135711, at *2 (N.D.Ill. Oct. 21, 2016). Where a party needs to have test results showing the existence of infringing ingredients in specific amounts in the opposing party's products, the production of the test results is not only relevant, but essential to the case. *See id.* Parties cannot shelter the results under attorney-client or work-product privileges. *See id.* "Only where the document is primarily concerned with legal assistance does it come within these privileges; technical information is otherwise discoverable." *See id.* (citing *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26 (D.Md.1974)). As such, parties' initial disclosures should be meaningful. *See* L.P.R. 2. Here, Nestlé only seeks Oil-Dri's underlying infringement investigation data – not attorney advice or mental impressions. (Dkt. 43, at 10.) Therefore, Oil-Dri can share this data with Nestlé without revealing confidential information. The Court need not issue an order of protection. *See See* Fed. R. Civ. P. 26(c); *Loctite Corp.*, 667 F.2d at 582; *see e.g., Lynk Labs, Inc.*, 2016 WL 6135711, at *2.

**CONCLUSION**

For the reasons stated herein, the Court grants Oil-Dri's Motion to Dismiss for Failure to State a Claim. [30] Nestlé's Counterclaims III-VI are dismissed without prejudice. If Nestlé cannot file amended counterclaims with facts that support its allegations on or before 5/22/17, these counterclaims will be dismissed with prejudice. Further, for the above reasons the Court denies Oil-Dri's Motion to Compel and Motion for a Protective Order. [39]

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: _4/24/2017____