IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OIL-DRI CORPORATION OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 16 C 9179 |
| ) | |
| NESTLÉ PURINA PETCARE COMPANY, ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Nestlé Purina Petcare Company ("Nestlé") filed four Motions to Strike Infringement Contentions disclosed by Plaintiff Oil-Dri Corporation of America ("Oil-Dri"). For the below reasons, the Court grants in part and denies in part Nestlé's Motions to Strike for Oil-Dri's Assertion of Alleged Induced Infringement [55], Addition of Alleged Use of the Purported Invention [58], Attempt to Claim an Earlier Priority Date [60, 70][1], and Initial & First Revised Infringement Contentions [80].

**BACKGROUND**

On September 23, 2016, Oil-Dri sued Nestlé for patent infringement of its cat litter product U.S. Patent No. 9,408,368 ("'368 Patent") pursuant to 35 U.S.C. § 271 *et. seq.* (Dkt. 1, at 1-2.) The patent implicates four Tidy Cats Lightweight products: 4-in-1 Strength; 24/7 Performance; Glad Tough Odor Solutions; and Instant Action ("Accused Instrumentalities"). (*Id.*, ¶ 7.) The products use clumping clay composed of sodium bentonite ("NaB") and a mineral known as "perlite." (*Id.* at 9.) The '368 Patent specifies, in pertinent part, that: NaB

---

[1] Nestlé's Attempt to Claim an Earlier Priority Date (Dkt. 70) provides a sealed, unredacted version of the redacted version (Dkt. 60).

1

comprises at least 47% of the product's external, exposed surface area ("ESA"); the ESA of the granular material be 5-53% of the total ESA of the mixture; and the mixture be "removably clumpable." (*Id.*)

Oil-Dri timely provided its Initial Infringement Contentions Pursuant to Local Patent Rule 2.2 ("Initial Contentions") on December 2, 2016. (Dkt. 56-1, at 2; Dkt. 28, at 1, 3.) In its Initial Contentions, Oil-Dri accused Nestlé of infringing the claims of the '368 Patent "pursuant to 35 U.S.C. § 271 et. seq" through "the manufacture, use, offer for sale and the sale of the Accused Products (or through earlier compositions, provided during the manufacturing process)…." (Dkt. 56-1, at 2, ¶ a-b; Dkt. 56-1, at 6.) Oil-Dri contended that each of the Accused Instrumentalities literally infringes or, to the extent that any element is not found, that its equivalent is present. (Dkt. 56-1, at 3, ¶ d.) Oil-Dri stated that it did not believe that Local Patent Rules ("LPR") 2.2(e) or 2.2(h) were relevant. (*Id.*, at 3-4, ¶¶ e, h.) Further, Oil-Dri stated that it was entitled to a priority date of "at least as early as the June 25, 2012 filing date of U.S.S.N. 13/524,021" and "likely as early as February 9, 2012 based on earlier documentation, although the analysis of discovery continues." (*Id.*, at 3, ¶ f.) Oil-Dri also accused Nestlé of willful infringement, contending that Nestlé "has known of the '368 Patent, or any of the prior-filed, published patent applications in its priority chain" (including Application 13/524,021, published December 20, 2012) due to a March 2014 letter from Oil-Dri Vice President and General Counsel, Doug Graham, to Nestlé's President, Nina Krueger, about Patent No. 5,975,019 ("'019 Patent") and earlier, ongoing litigation between the parties about '019 Patent (in Case No. 15-CV-1067). (*Id.*, at 3-4, ¶ g.) Oil-Dri also alleges that it believes any claim element literally infringes, but "[t]o the extent that any claim element is found not to be present in any of the Accused Instrumentalities, then Oil-Dri believes that its equivalent is present." (*Id.*,

at 3, ¶ d.)  Alongside its Initial Contentions, Oil-Dri stated that it "reserves the right to supplement these disclosures as further information becomes available." (*Id.*, at 2.)  Attached to its Initial Contentions, Oil-Dri provided an asserted claims chart which accused Nestlé of infringing on Claims 4-6 of '368 Patent for a composition where the granular filler material comprises anywhere from 5-53% (Claim 4), 10-53% (Claim 5), and 15-53% (Claim 6) of the ESA.  Oil-Dri based its claims on Nestlé's Material Safety Data Sheets, Oil-Dri testing, and Nestlé's disclosed advertising (*see* Dkt. 56-3, at 6-9; Dkt. 56-3, at 13-14.)

The parties participated in a Rule 26(f) planning phone conference on November 18, 2016, where the parties agreed that the final date for Oil-Dri to amend its pleadings would be December 7, 2016. (Dkt. 28, at 4.)  After this date passed, on December 28, 2016, Oil-Dri sent Revised Initial Infringement Contentions ("Revised Contentions") to Nestlé.  The Revised Contentions accused Nestlé of violating specific subsections of the underlying patent infringement statute, namely 35 U.S.C. § 271(a) for its manufacture and sales of the Accused Products and § 271(b) for "inducing others (e.g., its retailers) to engage in those sales." (Dkt. 56-3, at 2, ¶ a-b.)  Oil-Dri updated ¶ e, thus bringing LPR 2.2(e) into play, by accusing Nestlé of indirectly infringing and inducing infringement by "advertising, marketing and selling the Accused Instrumentalities to Nestlé retailers, for example, for resale to consumers" in violation of 35 U.S.C. § 271(b). (*Id.*, at 3, ¶ e.)  Oil-Dri also updated its statement under LPR 2.2(h).  Instead of declining that the rule played a role in the suit, Oil-Dri's Revised Contentions state simply that "Internal Oil-Dri testing and analysis, as shown by the documentation referenced in subparagraph f…supports the invention dates provided…for each of the Accused Claims." (*Id.*, at 4, ¶ h.)  Oil-Dri also specified priority dates relating to particular elements of the asserted claim, contending that '368 Patent entitles Oil-Dri to a priority date "of at least as early as July

3

14, 2010 as to granular filler materials generally" and "at least as early as February 9, 2012 as to perlite," citing to Oil-Dri Bates-stamped disclosures and asserting that internal testing and analysis confirmed these invention dates. (*Id.*, at 3-4, ¶¶ f, h.) Oil-Dri reiterated that, "[t]o the extent that any claim element is found not to be present in any of the Accused Instrumentalities, then Oil-Dri believes that its equivalent is present." (*Id.*, at 3, ¶ d.)

Nestlé moves to strike Oil-Dri's Initial and Revised Infringement Contentions, in part and in their entirety (Dkt. 55; Dkt. 58; Dkt. 60; Dkt. 70; Dkt. 80), asserting that each change was untimely and improper, or otherwise insufficient.

## **LEGAL STANDARD**

Under LPR 2.2, a party claiming patent infringement must serve its counterpart with initial infringement contentions that identify, in pertinent part:

(a) …each claim of each patent in suit that is allegedly infringed by the opposing party, including for each claim the applicable statutory subsection of 35 U.S.C. § 271;…

(c) [in a chart] …specifically where each element of each asserted claim is found within each Accused Instrumentality…;

(d) …whether each element of each asserted claim is claimed to be present in the Accused Instrumentality literally or under the doctrine of equivalents. For any claim under the doctrine of equivalents, the Initial Infringement Contentions must include an explanation of each function, way, and result that is equivalent and why any differences are not substantial;

(e) for each claim that is alleged to have been indirectly infringed…any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement…;

(f) for any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled;

(g) …the basis for any allegation of willful infringement; and

(h) if a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own…apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention… each such apparatus, product,

4

> device, process, method, act, or other instrumentality that incorporates or reflects that particular claim...

N.D. ILL. L.P.R. 2.2. The local rules intend initial infringement contentions to provide early, fair notice of the plaintiff's theories of infringement. *See e.g.*, *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 08 C 3379, 2012 WL 5444979, at *4 (N.D.Ill. Mar. 21, 2012); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05 C 4811, 2014 WL 4477932, at *2 (N.D.Ill. Sept. 10, 2014) (citation omitted); *see also Rehco, LLC v. Spin Master, Ltd.*, No. 13 C 2245, 2014 WL 1088517, at *4 (N.D.Ill. Mar. 17, 2014) (denying motion to strike as "lack[ing] merit" because initial infringement contentions included "detailed charts"). Initial infringement contentions must meet a notice pleading standard which is meant to prevent "shifting sands" gamesmanship in claim construction. *See O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365 (Fed.Cir. 2006) ("…[T]he Federal Rules require only notice pleading by the claimant."); *see e.g.*, *Trading Techs. Int'l, Inc.*, 2014 WL 4477932, at *2 (citation omitted); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, Nos. 08 C 3379 & 09 C 4530, 2012 WL 5444979, at *4 (N.D.Ill. Mar. 21, 2012) (citing *O2 Micro*, 467 F.3d at 1364 (internal quotation and citation omitted)). Parties must offer "meaningful" and "nonevasive" disclosures, not just boilerplate language. N.D. ILL. L.P.R. 2.0 cmt. Overall, district courts possess wide discretion in interpreting their local rules. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324 (Fed.Cir. 2016).

As another court recently articulated, motions to strike initial infringement contentions are "rare" in this District and no standard has been clearly established for evaluating them. *See e.g.*, *Ventriloscope v. MT Tool and Manufacturing*, No. 16 C 5298, 2017 WL 489416, at *3 (N.D.Ill. Feb. 6, 2017). Most relevant to this case, the Local Patent Rules for the Northern District of Illinois do not explicitly prescribe whether, when, and how a party may amend their

5

initial infringement contentions, nor whether and when they can break from their agreed-upon disclosure schedule.  *See* N.D.ILL. L.P.R. 2.2; Fed. R. Civ. P. 26.

Yet the Local Rules, along with those in other districts with "nearly identical" terms, offer insights.  *See Ventriloscope,* 2017 WL 489416, at *3 n.1.  For example, in the Northern District of California, a district with similar local rules, parties may amend their infringement contentions "only by order of the Court upon a timely showing of good cause," including upon the recent discovery of material, prior art or nonpublic information about the accused instrumentality despite earlier due diligence.  N.D. CAL. L.P.R. 3.6; *see O2 Micro Intern. Ltd.*, 467 F.3d at 1366 ("'[G]ood cause' requires a showing of diligence").  Other districts that require such contentions have "frequently treated" motions to strike such contentions as motions to compel their amendment.  *See e.g.*, *Geovector Corp. v. Samsung Elecs. Co.*, No. 16 C 2463, 2017 WL 76950, at *7 (N.D.Cal. Jan. 9, 2017); *Yama Capital LLC v. Canon Inc.*, No. 12 C 7159, 2013 WL 6588589, at *4 (S.D.N.Y. Dec. 13, 2013) ("Even where a defendant only moves to strike the infringement contentions, [the motion] may be construed …as an alternative motion to compel more detailed…contentions." (citation and internal quotation marks omitted)).  Those courts have also held that striking infringement contentions is a "severe sanction" that "should be used sparingly" and "only for good cause."  *See e.g.*, *Finjan, Inc. v. Proofpoint, Inc.*, No. 13 C 5808, 2015 WL 1517920, at *12 (N.D.Cal. Apr. 2, 2015); *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10 C 2863, 2015 WL 4647923, at *2 & n.6 (N.D.Cal. Aug. 5, 2015) (citing *Finjan* for same proposition).  Another court in this district has found that "it is appropriate to treat Defendant's motion [to strike] as seeking to compel more detail…"  *See e.g.*, *Ventriloscope*, 2017 WL 489416, at *3.

6

## DISCUSSION

**I.  Assertion of Alleged Induced Infringement (Dkt. 55)**

Nestlé argues that Oil-Dri's allegation of induced infringement in the Revised Contentions does not comport with Oil-Dri's Complaint; that Oil-Dri untimely introduced the allegation after the parties' agreed-upon deadline to amend the infringement contentions; and that the allegation fails to satisfy the requirements for induced infringement.  (Dkt. 55.)  Oil-Dri argues that Nestlé cannot point to any legal authority requiring that it alleged induced infringement in either its Complaint or Initial Contentions; that it did not learn about the alleged induced infringement until after disclosing its Initial Contentions; and that, in any case, the details provided suffice to allege induced infringement.  (Dkt. 75, at 1, 4-5.)

The local rules require that a party's initial infringement contentions specify the statutory subsection that applies to the claim at hand and that each claim alleging indirect infringement supplies a "a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement…"  N.D. ILL. L.P.R. 2.2(a), 2.2(e).  Such allegations require the claimant to allege that the defendant possessed knowledge that the induced acts constitute patent infringement.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011).  No authority states that the allegation must appear in the complaint.  In fact, the Preamble to the local rules suggests that "[c]omplaints…in most patent cases are worded in a bare-bones fashion…" N.D.ILL. L.P.R. Preamble.

In light of this, the Court construes Nestlé's motion to strike as a motion to compel more detail and considers Oil-Dri's Revised Contentions.  *See e.g.*, *Ventriloscope*, 2017 WL 489416, at \*3.  Oil-Dri's Complaint and Initial Contentions indeed did not include this allegation, nor specify that Nestlé had allegedly violated any particular subsection of 35 U.S.C. § 271.  (*See*

7

Dkt. 1; Dkt. 56-1.)  However, in its Revised Contentions, Oil-Dri specifies the particular subsection implicated for this claim by indicating that the alleged infringement violates 35 U.S.C. § 271(b).  (Dkt. 56-3, at 3, ¶ e.)  Its Revised Contentions accuse Nestlé of inducing infringement through "advertising, marketing and selling the Accused Instrumentalities to Nestlé retailers, for example, for resale to consumers," but fail to mention any party other than Nestlé. (*Id.*)  In its Response, Oil-Dri explains that Oil-Dri first learned in late December about Nestlé's collaboration with Walmart and other retailers in the development of Nestlé's accused Tidy Cats Lightweight cat litters, and provides a timeline to explicate how Nestlé could have "known" that it infringed on '368 Patent at that time.  (Dkt. 75, at 4.)  In doing so, Oil-Dri's Response provides a more sufficient description, including the requisite allegations that Nestlé possessed knowledge that the induced acts constituted infringement.  (*See* Dkt. 56-3.)  *See Global-Tech Appliances, Inc.*, 563 U.S. at 765; *see e.g.*, *Fatigue Fracture Tech. v. Navistar*, No. 15 C 5667, Dkt. 66 (N.D.Ill. Oct. 17, 2016).  Construed as a motion to compel more detail, the Court grants Nestlé's motion regarding Oil-Dri's allegation of induced infringement (Dkt. 55) and requires Oil-Dri to disclose Revised Contentions alleging Nestlé's knowledge within 21 days of this Order.

## II.  Addition of Alleged Use of the Purported Invention (Dkt. 58)

Nestlé argues that Oil-Dri failed to preserve the right to rely on the assertion that its own products practice the claimed invention by not including such a claim in the Complaint or its Initial Contentions and by insufficiently describing any product that uses the claimed invention. (Dkt. 58.)  Oil-Dri responds simply that Oil-Dri had "never practiced the Asserted Claim of the '368 Patent-in-suit because it has never sold a cat litter with perlite," but that Oil-Dri counsel later learned that "Oil-Dri had commercialized cat litter falling within the scope of one or more

*non*-asserted claims of the '368 Patent-in-suit," and accordingly revised its infringement contentions promptly after learning this. (Dkt. 75, at 5.)

Local Rule 2.2(h) requires parties to specify in their initial contentions each "apparatus, product, device, process, method, act, or other instrumentality" for which the party wishes to preserve its right to rely on the assertion that its own such instrumentality practices the claimed invention. N.D. ILL. L.P.R. 2.2(h). No rule precludes Oil-Dri from amending its contentions, and other courts have allowed such amendments with good cause and if timely. *See O2 Micro*, 467 F.3d at 1364 (finding valid Northern District of California local rules that allow a party to revise its final infringement contentions more than 30 days after filing them "by order of the Court…upon a showing of good cause" (internal citation omitted)); *see e.g.*, *DCG Systems v. Checkpoint Technologies, LLC*, No. C 11-03792 PSG, 2012 WL 1209161, at *3 (N.D.Cal. Apr. 16, 2012) (bulk of leave to amend denials occur because patentee "unreasonably delayed amending the infringement contentions – five months to one year – or there were errors or omissions that patentee's counsel admitted was his own oversight.").

Guided by these principles, the Court weighs whether Oil-Dri appropriately revised its Initial Contentions to add the use of a purported invention. The omission may have occurred due to counsel error, as Oil-Dri's Response readily admits that it revised its contentions on this matter after Oil-Dri counsel learned more about Oil-Dri's commercial products after disclosing its Initial Contentions, which could potentially serve as grounds to deny Oil-Dri's opportunity to amend. (Dkt. 75, at 5.) *See e.g.*, *id.* However, Oil-Dri revised its contentions promptly, only a few weeks after disclosing its Initial Contentions to Nestlé. *See e.g.*, *id.* (*See* Dkt. 56-1; Dkt. 56-3.) Fact discovery continues, such that Nestlé has not been unduly prejudiced by this revision, and Nestlé cites to no case law to support its assertion that Oil-Dri was required to disclose this

information in its Initial Contentions without the ability to later revise them. (*See* Dkt. 58; Dkt. 84.) Accordingly, allowing this revision constitutes an appropriate accommodation to the parties' pretrial schedule. A motion to strike provides a severe sanction, especially at this stage. *See e.g.*, *Ventriloscope*, 2017 WL 489416, at *3; *DCG Systems,* 2012 WL 1209161, at *3. The Court therefore denies Nestlé's Motion to Strike Oil-Dri's Addition of Alleged Use of the Purported Invention (Dkt. 58).

### III.    Attempt to Claim an Earlier Priority Date (Dkt. 60, 70)

Nestlé argues that Oil-Dri's revised priority date employs a "shifting sands" approach that does not comport with the Local Patent Rules, and that Oil-Dri has prejudiced Nestlé through this gamesmanship. (Dkt. 60; Dkt. 70.) In response, Oil-Dri argues that it should be allowed to make such revisions, and that it did so promptly, but that it provided its earliest-claimed priority date in its Initial Contentions in any case. (Dkt. 75, at 1-4.)

The Local Rules require parties' initial infringement contentions to identify "for any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled…" N.D.ILL. L.P.R. 2.2(f). While no rule bars parties in this district from amending their priority date in revised initial contentions, other districts with local rules utilizing similar language have pushed for specific dates, not ranges, early on during discovery. *See e.g.*, *Richtek Technology Corporation v. uPI Semiconductor Corporation*, No. 09 C 5659 WHA, 2016 WL 4269095, at *2 (N.D.Cal. Aug. 15, 2016) (requiring claimant to assert earlier priority date "at the outset" of infringement contentions and denying leave to amend where claimant provided no explanation for failing to do so); *Blue Spike, LLC v. Adobe Systems, Inc., et al.*, No. 14 C 1647-YGR (JSC), at *7 (N.D.Cal. Jan. 26, 2016) (patentee must assert a particular priority date, "not a start date, end date, or date range," and may not use "no later than" language to preserve

10

its ability to assert an earlier priority date down the road (internal citation omitted)); *Harvatek Corporation v. Cree Inc., et al.*, No. 14 C 5353 WHA, 2015 WL 4396379, at *3 (N.D.Cal. July 17, 2015) (striking "at least as early as" language where claimant submitted revised priority date two months after disclosing initial contentions). *But see*, *e.g.*, *DCG Systems*, 2012 WL 1209161, at *3 (revisions submitted a few weeks later occurred within a reasonable timeframe).

Oil-Dri initially stated that it was entitled to a priority date of "at least as early as the June 25, 2012 filing date of U.S.S.N. 13/524,021" and "likely as early as February 9, 2012 based on earlier documentation, although the analysis of discovery continues." (Dkt. 56-1, at 3, ¶ f.) Oil-Dri later revised these priority dates to reflect dates relevant to particular elements of the asserted claim, contending that '368 Patent entitles Oil-Dri to a priority date "of at least as early as July 14, 2010 as to granular filler materials generally" and "at least as early as February 9, 2012 as to perlite." (*Id.*) Oil-Dri uses some of this same ambiguous language that theoretically would allow them to keep moving the goal post on its alleged priority date.

Yet given that no rule in this district clearly outlines whether and when claimants may provide revised initial contentions, the Court finds that, without such prior warning, striking Oil-Dri's revised priority date would provide a severe sanction. *See e.g.*, *Ventriloscope*, 2017 WL 489416, at *3. Instead, the Court orders Nestlé to disclose Revised Contentions within 21 days of this Order that assert their final, specific priority dates for these claims, without the use of "no later than" or "at least as early as" language and without leave to further amend.

IV. **Initial and First Revised Infringement Contentions (Dkt. 80)**

In addition to Nestlé's Motions to Strike specific sections of Oil-Dri's Revised Contentions, Nestlé moves to strike the Initial and Revised Contentions in their entirety. (Dkt. 80.) Nestlé asserts that both of Oil-Dri's Contentions are "boilerplate" and fail to disclose any

basis for the allegations (*Id.* at 2-5), improperly include "placeholders" without the requisite specificity (*Id.* at 7-9), and that neither contention sufficiently alleges willful infringement under LPR 2.2(g) (*Id.* at 9).[2] Oil-Dri maintains that it has complied with the Local Patent Rules by thoroughly alleging infringement and providing sufficient supporting materials. (Dkt. 89.)

### A. Boilerplate and Placeholder Language

Both Oil-Dri's Initial and Revised Contentions include a chart detailing Claims 4-6. (Dkt. 56-1; Dkt. 56-3.) The chart outlines the components of the Accused Products – namely that they employ a composition comprising a "mixture"; including "sodium bentonite"; "and a granular filler material, which comprises perlite"; "wherein sodium bentonite comprises at least 47% of the total external surface area of the mixture"; "wherein the granular material comprises 5% [or 10% or 15%] of the total external surface area of the mixture"; "and wherein the mixture is removably clumpable." (*Id.*) For each element, Oil-Dri's chart explains its basis for the claim that Nestlé improperly infringes the element with its Accused Products, whether through Nestlé's Material Safety Data Sheets, Oil-Dri's testing, or Nestlé's advertising stating that the mixture forms "[l]ight, tight clumps for easy scooping." (*Id.*) Each element and explanation speaks to Oil-Dri's contention that Nestlé has infringed through the "manufacture, use, offer for sale and the sale of the Accused Products." In so doing, to the extent that Oil-Dri's claim relates to how the Accused Products literally infringe, Oil-Dri provides more than "boilerplate" language with "placeholders," instead providing detail sufficient to give Nestlé early, fair notice of the claims and their bases, especially at this stage of the litigation while discovery continues. *See O2 Micro Intern. Ltd.*, 467 F.3d at 1365; N.D.ILL. L.P.R. 2.0, 2.2(c); *see e.g.*, *Trading Techs. Int'l, Inc.*, 2014 WL 4477932, at *2; *Fujitsu Ltd.*, 2012 WL 5444979, at *4.

---

[2] Nestlé also argues that Oil-Dri's Contentions should be struck because Oil-Dri has attempted to circumvent the disclosure requirements by alleging attorney-client privilege over its testing data. (*Id.* at 5-7.) The Court has dealt with this allegation in an earlier Order, and need not revisit that discussion here. (*See* Dkt. 95.)

However, Oil-Dri hedges its claim, acknowledging that the literal claim elements may not be found to be present in any of the Accused Instrumentalities, but instead that their equivalents may be present. (Dkt. 56-1, at 3, ¶ d.) Since the local rules require any claim under the doctrine of equivalents to include "an explanation of each function, way, and result that is equivalent and why any differences are not substantial" in a party's initial contentions, N.D.ILL. L.P.R. 2.2(d), Oil-Dri's contentions fail in this regard. To maintain its claim that Nestlé's equivalents of the Accused allegedly infringed, Oil-Dri must revise its contentions in 21 days.

### B. Willful Infringement

Regarding its willful infringement claim, Oil-Dri must comply with Local Rule 2.2(g), which requires claimants to identify "the basis for any allegation of willful infringement." In its Initial Contentions, Oil-Dri accuses Nestlé of willful infringement, contending that Nestlé "has known of the '368 Patent, or any of the prior-filed, published patent applications in its priority chain," including Applications 15/053,114, published June 16, 2016, and 13/524,021, published December 20, 2012, because of the earlier and ongoing litigation in case No. 15-CV-1067 about '019 Patent, distinct from '368 Patent, the patent at issue in the instant case. (*See* Dkt. 56-1, at 3-4, ¶ g.) Oil-Dri's Revised Contentions add that Oil-Dri refers to its "patent pending" lightweight cat litters in its 2012 Annual Report, which the company made available on its website in mid-November 2011. (Dkt. 56-3, at 3-4, ¶ g.)

Notice about alleged infringement of one patent does not necessarily imply notice or knowledge of alleged infringements of another patent. However, construing this Motion as a Motion to Compel, *see e.g.*, *Ventriloscope*, 2017 WL 489416, at *3, and thus contemplating the additional information provided by Oil-Dri in its Revised Contentions, the Court finds that the mid-November 2011 publication of Oil-Dri's Annual Report could have plausibly provided the

source of Nestlé's knowledge that would have allowed it to willfully infringe. Oil-Dri's contentions therefore sufficiently allege this claim at this stage. *See O2 Micro Intern. Ltd.*, 467 F.3d at 1365; N.D.ILL. L.P.R. 2.0, 2.2(c); *see e.g.*, *Trading Techs. Int'l, Inc.*, 2014 WL 4477932, at *2; *Fujitsu Ltd.*, 2012 WL 5444979, at *4.

Motions to strike initial infringement contentions rarely arise, let alone motions to strike both a party's Initial and Revised Infringement Contentions in their entirety. *See e.g.*, *Ventriloscope*, 2017 WL 489416, at *3. The Court declines to do so at this time.

## CONCLUSION

For the above reasons, construing Nestlé's motions as motions to compel, the Court grants Nestlé's Motions to Strike for Oil-Dri's Assertion of Alleged Induced Infringement [55], Attempt to Claim an Earlier Priority Date [60, 70], and Initial & First Revised Infringement Contentions [80], and Oil-Dri has 21 days from the entry of this Order to amend and disclose their Revised Initial Contentions consistent with this Order. The Court denies Nestlé's Motions to Strike for Oil-Dri's Addition of Alleged Use of the Purported Invention [58].

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: \_\_5/9/2017\_\_\_\_